UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RICHARD STANDAFER,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. EDCV14-1541 AJW<br><br>**MEMORANDUM OF DECISION** |

    Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

    The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-4]. In a December 10, 2012 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work provided he is limited to simple, routine, unskilled work. [AR 17]. The ALJ further determined that plaintiff's RFC did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found plaintiff not disabled at any time through the date of

1 his decision. [Administrative Record ("AR") 13-17].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Treichler v. Comm'r, Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Vocational expert's testimony**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform the alternative jobs identified by the vocational expert ("VE").

At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing, through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, that the claimant can perform other jobs that exist in substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001) (internal quotation marks omitted). "Where the testimony of a [vocational expert] is used at Step Five, the [vocational expert] must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

Relying on the VE's testimony, the ALJ found that plaintiff's RFC did not preclude him from performing two jobs listed in the Dictionary of Occupational Titles ("DOT"), document preparer (DOT

occupational classification number 249.587-018) and escort vehicle driver (DOT occupational classification number 919.663-022). Plaintiff contends that the ALJ erred in finding that he can perform the DOT job of document preparer because it requires "Level 3" reasoning, and that the ALJ erred in failing to consider the effect of his prescription narcotic drug use on his ability to perform the job of escort vehicle driver.

"The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.' The GED levels includes the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (quoting DOT, App. C, 1991 WL 688702 (4th ed.1991)).

The Commissioner relies primarily on the DOT for "information about the requirements of work in the national economy" but "also uses testimony from vocational experts to obtain occupational evidence." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2)). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether that testimony conflicts with the DOT. Massachi, 486 F.3d at 1152. The ALJ must obtain an explanation from the vocational expert for any conflict and then must determine whether the explanation is reasonable, and whether a basis exists for relying on the expert rather than the DOT. Massachi, 486 F.3d at 1153; see Zavalin, 778 F.3d at 846 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.").

The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE said that it was. [AR 54]. Plaintiff contends, however, that the DOT job of document preparer exceeds his RFC for simple, routine, unskilled work because it requires Level 3 reasoning, which means the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." See DOT occupational classification number 249.587-018.

Under Ninth Circuit law, an apparent inconsistency arises when an ALJ, relying on a VE's

testimony, finds that a claimant who is limited to "simple, routine, or repetitive work" can perform a DOT job requiring Level 3 reasoning. Zavalin, 778 F.3d at 846-847 (holding the ALJ's failure to recognize the apparent inconsistency and reconcile it was error, and that the error was not harmless). The ALJ erred in failing to recognize and reconcile the same inconsistency in this case.

Neither plaintiff nor defendant cites Zavalin. Defendant's contention that no inconsistency exists is foreclosed by Zavalin. Defendant also argues that "the record as a whole" demonstrates that plaintiff can perform the job of document preparer notwithstanding the Level 3 reasoning requirement because he is a high school graduate, which implies an ability to perform unskilled work; he has semi-skilled and skilled past work; and the medical and testimonial evidence of record supports the conclusion that he can meet the demands of unskilled work.

Defendant's contentions fail to demonstrate that the ALJ's error was harmless. Defendant's argument that plaintiff's high school education, past work, and record evidence show that he retained the capacity for unskilled work conflates skill level with reasoning level. The reasoning level of a job is distinct from its skill level. The job of document preparer is unskilled because, like both of the DOT jobs at issue in Zavalin, it has a "Specific Vocational Preparation" ("SVP") of "Level 2," corresponding to unskilled work.[1] The ALJ did not merely limit plaintiff to unskilled work, but to "simple, routine" unskilled work. Plaintiff's RFC for "simple, routine" unskilled work limits not only the skill level of the work he can perform, but also the reasoning level of such work.

In Zavalin, the Ninth Circuit expressly rejected the Commissioner's argument "that the DOT's reasoning levels correspond only to a person's level of education and, therefore, [the claimant] is presumptively capable of Level 3 Reasoning because he completed high school." Zavalin, 778 F.3d at 847. The Ninth Circuit explained that,

[c]ontrary to the Commissioner's claim, the DOT specifically defines GED reasoning levels

---

[1] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

4

>to include "informal" as well as "formal" education that is required for "satisfactory job performance." Thus, there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed. While [the claimant's] educational background is relevant, the DOT's reasoning levels clearly correspond to the claimant's ability because they assess whether a person can "apply" increasingly difficult principles of rational thought and "deal" with increasingly complicated problems.

Zavalin, 778 F.3d at 847 (quoting DOT, App. C, 1991 WL 688702).

Under Zavalin, plaintiff's high-school education, standing alone, is not sufficient to reconcile the conflict between a limitation to simple, routine work and a job's requirement of Level 3 reasoning. Nor does plaintiff's past performance of semiskilled or skilled jobs resolve the conflict. Not only are skill level and reasoning level distinct job requirements, the ALJ found that plaintiff's RFC precludes the performance of his past relevant semiskilled and skilled work. [AR 25].

Defendant contends that there is other evidence in the record that would demonstrate that plaintiff could perform a Level 3 reasoning job, but since the ALJ did not rely on that evidence to support his deviation from the DOT at step five, this court cannot find harmlessness based on such evidence. See Zavalin, 778 F.3d at 848 (holding that since the ALJ did not rely on the claimant's use of the computer and video games to reconcile the apparent conflict between the claimant's RFC and the ALJ's finding that the claimant could perform a Level 3 reasoning job,"we cannot do so now to find the error harmless") (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) ("[I]f the Commissioner's request that we dismiss the ALJ's error as harmless invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline.")); see also Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003-1004 (9th Cir. 2015) (holding that since an apparent conflict existed between the claimant's RFC, which "limits her to performing one- and two-step tasks," and "the demands of Level Two reasoning," and since there was "no explanation in the record as to why the VE or the ALJ may have believed that [the claimant's] specific limitation to 'one to two step tasks' should not be taken at face value," the record did "not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error," and the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Zavalin, 778 F.3d at 848). Since

this court cannot conclude that the ALJ's error was harmless, reversal is required.

Plaintiff also contends that the ALJ erred in finding that he can perform the DOT job of escort vehicle driver because he does not have a commercial driver's license ("CDL"), which is required for some of those jobs. In support of that contention, plaintiff has attached as Exhibit B to the joint stipulation a detailed description of that job obtained from Job Browser Pro by Skill TRAN. Plaintiff also contends that his use of prescription narcotic pain medications Norco and Oxycontin is incompatible with the ALJ's finding that he could perform the job of escort vehicle driver.

Defendant does not contend that plaintiff's lack of a CDL is irrelevant at step five, but she contends that the ALJ did not err because plaintiff's Exhibit B indicates that a CDL is not required for all escort vehicle jobs, only for driving large trucks. [JS 23]. The VE testified that there are 22,542 escort vehicle jobs nationally and 2,500 such jobs in California. She did not testify as to the number of escort vehicle jobs that require a CDL nationally or regionally, and there is no evidence on that issue in the record. Therefore, it is not clear from the record whether a significant number of escort vehicle driver jobs exist in the national or regional economy that plaintiff can perform without a CDL.

Plaintiff's prescription narcotic pain medication history is relevant to his ability to work as an escort vehicle driver. During the November 28, 2012 hearing, plaintiff testified that he was presently taking Oxycontin, 20 milligrams three times daily, and hydrocodone, a narcotic used in pain relievers. [AR 45]. The ALJ noted that testimony in his written decision. [AR 17-18]. Although the ALJ rejected the alleged severity of plaintiff's subjective complaints, he did not indicate that he rejected plaintiff's testimony about his prescription drug use. Other evidence in the record corroborates plaintiff's use of prescription narcotics during the relevant period, including Oxycontin (a brand name for oxycodone), Norco (a brand name for hydrocodone and acetaminophen), morphine sulfate, and a fentanyl patch. [AR 244, 302-381, 483-484, 535-522]. The ALJ did not explicitly discuss that evidence or make any findings about the effects of plaintiff's prescription medication on his RFC.

The Ninth Circuit has held that "[i]f a drug prescription disqualifies a claimant from performing his past relevant work, he is not capable of returning to that work." Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010). In Berry, the claimant argued that the ALJ erred in finding that he could return to his past work as a courier driver because he would need a CDL, and his prescription drug use would render him physically

6

unable to pass a mandatory drug testing required to obtain and keep a CDL. Berry, 622 F.3d at 1231-1234. Noting that the ALJ had refused the claimant's offer of proof that his "prescribed medication regime to treat his potentially disabling condition would categorically prevent him from obtaining work as a courier by rendering him physically unable to pass a drug test that is mandatory across employers," and that the district court relied on the lack of such evidence to affirm the Commissioner's denial of benefits, the Ninth Circuit held that the claimant "cannot meaningfully be said to be capable of working as a courier" without evidence as to whether his prescription drug regimen would prevent him from passing mandatory drug testing. Berry, 622 F.3d at 1233-1234 (vacating and remanding for further proceedings).[2]

This case, unlike Berry, is a step-five case, so the Commissioner has the burden of proving that the claimant can perform alternate work that exists in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Hoopai v. Astrue, 499 F.3d 1071, 1074-1075 (9th Cir. 2007); Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999). The ALJ did not consider the effect of plaintiff's prescription narcotic pain use on his ability to perform the job of escort vehicle driver. Defendant

---

[2] The holding in Berry appears to be consistent with the Commissioner's Program Operations Manual System ("POMS"), which states:

> NOTE: If a claimant alleges inability to do PRW as the result of a medically based reason that prevents him or her from meeting the licensure requirements for his or her PRW, carefully assess the impact of the claimant's impairment-related limitations or restrictions, including limitations or restrictions resulting from prescribed treatment, on the claimant's RFC.
>
> EXAMPLE: The claimant states that he can no longer perform his PRW as a truck driver because his narcotic pain medications for his back impairment prevent him from obtaining the commercial driver's license that is necessary to do his job. Although we do not consider the claimant's inability to obtain a license, the adjudicator should carefully consider whether the RFC limitations resulting from his back impairment and the side effects of his medications would preclude his PRW as a truck driver.

DI 25005.001 Determination of Capacity for Past Relevant Work (PRW) —Basics of Step 4 of the Sequential Evaluation Process, *available at* http://policy.ssa.gov/poms.nsf/lnx/0425005001 (last accessed Feb. 11, 2016). POMS does not create "judicially enforceable duties on either this court or the ALJ" but is "entitled to respect" to the extent that it has "the power to persuade." Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) (internal citations and quotation marks omitted).

argues that since plaintiff drives his son to school and drives himself to doctor's appointments, he cannot legitimately claim that he cannot drive a car safely due to his medications. Plaintiff's ability and willingness to do some driving is not irrelevant to the ALJ's RFC determination. Nonetheless, plaintiff's choice to drive for non-work purposes (safely or unsafely) despite his prescription medication use does not necessarily mean that he is physically able to meet the driving requirements for employment as an escort vehicle driver.

The ALJ erred in failing to reconcile the conflict between the DOT and his finding that plaintiff can perform the job of document preparer, and his finding that a significant number of jobs exists that plaintiff can perform is not based on substantial evidence in the record. Accordingly, the Commissioner has not met her burden at step five, and a remand for further administrative proceedings is the appropriate remedy. See Zavalin, 778 F.3d at 848; Berry, 622 F.3d at 1237.

Plaintiff also contends that the ALJ erred in evaluating the medical evidence, principally by rejecting the opinion of his treating physician, Dr. Huynh, and a workers' compensation examining orthopedist, Dr. Steiger, without recontacting them for clarification. [See JS 4-7]. Since remanding this case due to the ALJ's error at step 5 will provide an opportunity for further development of the record, it is unnecessary to address plaintiff's additional contentions. On remand, the Commissioner shall direct the ALJ to conduct a supplemental hearing, to take steps to ensure that the record is fully developed, and to issue a new hearing decision based on the record as a whole. Plaintiff will be free to present additional evidence to the ALJ and, if necessary, to request the ALJ's assistance in obtaining evidence plaintiff contends is needed for full development of the record.

## Conclusion

The Commissioner's decision is not based on substantial evidence in the record and is not free of legal error. Accordingly, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

February 16, 2016

ANDREW J. WISTRICH
United States Magistrate Judge

8